IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 17, 2016

## ARMAND E. BOOKER, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 104182     Steven W. Sword, Judge**

**No. E2015-01098-CCA-R3-PC – Filed March 7, 2016**

The Petitioner, Armand E. Booker, Jr., appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his 2014 guilty pleas to especially aggravated kidnapping, aggravated burglary, aggravated robbery, aggravated assault, employing a firearm during the commission of a dangerous felony, attempt to commit aggravated robbery, and custodial interference and his effective fifteen-year sentence. The Petitioner contends that (1) his guilty pleas were involuntary and unknowing and (2) he received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Armand Booker.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Charme P. Allen, District Attorney General; and TaKisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the Petitioner's February 18, 2014 guilty pleas pursuant to a negotiated agreement that resolved three cases. In case number 101763B, the Petitioner pleaded guilty to especially aggravated kidnapping, aggravated burglary acting in concert with two or more persons, aggravated assault acting in concert with two or more persons, aggravated robbery, and employing a firearm during the commission of a dangerous felony. In case number 101736, the Petitioner pleaded guilty to attempted aggravated robbery. In case number 101954, the Defendant pleaded guilty to custodial interference. The Petitioner

received an effective fifteen-year sentence pursuant to the plea agreement. On September 18, 2014, the Petitioner filed a petition for post-conviction relief alleging that his guilty pleas were unknowingly and involuntarily entered and that he received the ineffective assistance of counsel because defense counsel failed to explain adequately the charges and evidence against him.

## Guilty Plea Proceedings

At the guilty plea hearing, relative to case number 101763B, the State's recitation of the facts was as follows:

[The victim] was at home here in Knox County[.]

. . . .

At around seven o'clock Judge Judy comes on, and he is on the phone with his sister. There is a knock at the door. He goes to the door and—and he says, "Who is it?" And the voice responds "Dearis" (phonetic).

. . . .

Not really paying attention, he opens the door and about that time there are four black males and two—two of them are armed with a gun. They force their way in. They force him to sit in a chair. One young man who was later identified as Malik Williams stood with a gun over him[.] The other three men entered the house [and] were later identified as Canaan Ross, Mr. Armand Booker, and Richard Wynn.

While in the house, they are looking for different items. They make demands, want to know where his wallet is. He tells them initially he doesn't have a wallet. They search the house, and they find the wallet. They threaten that they should have killed him. They should kill him for lying to them.

. . . .

While there, they beat him in the face . . . terrorizing him. They make him get down on the floor. They threaten to shoot him in the knee[.] They smoked [marijuana], drank some tequila . . . all four of the individuals, including Mr. Booker, at one time or another actually had possession of the gun. This ordeal lasts well over four hours.

-2-

. . . .

When they left, they took property belonging to [the victim], and they took his car. During this period of time [the victim] was confined to a chair. Then he was removed from the chair and placed on the floor. He was unable to—to move about and do as he wished. He was struck with the gun, and, again, property had been taken. [The victim], after they left, he eventually ran to a neighbor's house and contacted the police and reported this crime[.]

. . . .

Through an investigation by KPD . . . Mr. Booker was brought in. He was interviewed. He admitted to being at [the victim's] residence[,] and he identified the three men that were with him[.]
Relative to Case #101736, the State's recitation of the facts was as follows:

A couple of days later in the same area of town there was a cab driver [who] had responded to the apartment complex . . . to pick up a—a fare. When he did, the proof would be that Mr. Booker, along with Canaan Ross, attempted to rob him, made a demand for his property, for his money. [The cab driver] drove off, and the proof would be that Canaan Ross did fire a gun multiple times at [the cab driver] as he drove off.

Relative to Case #101954, the State's recitation of the facts was as follows:

Proof would be that after he made bond, within a very short period of time he met up with his ex-girlfriend who is the mother of his child. There was an altercation. The proof would be Mr. Booker did put his hands on Alexis Alsup, who's the mother of his child, did take the baby from her arms and ran. She gave chase, and eventually, he put the child down and ran away. The police were called, and Mr. Booker was arrested.

Proof would be that all these events did take place in Knox County, and the child was in the custody of Ms. Alexis Alsup. Mr. Booker did not have the right to take the baby from her arms.

Defense counsel stipulated that there was sufficient evidence to convict the Petitioner of the offenses, but he added that the Petitioner did not threaten or hit the robbery victim.

At the guilty plea hearing, the Petitioner told the trial court that he was eighteen years old and had obtained his high school diploma. The Petitioner denied having taken "anything" that could affect his ability to think. The court recounted the plea agreement to the Petitioner, including the offenses to which he was pleading guilty and the sentences he would receive. The record reflects that the Petitioner nodded affirmatively, indicating he understood the agreement. The court informed the Petitioner of his rights to an attorney and not to plead guilty. The Petitioner stated that he understood these rights. When asked whether the Petitioner was entering into the plea agreement voluntarily, the Petitioner said, "I am pleading guilty." The Petitioner denied being forced or coerced into pleading guilty and said he wanted to plead guilty. The Petitioner said that he and defense counsel reviewed the waiver of trial by jury form, that he signed it, and that he understood the rights outlined in the waiver form. The court informed the Petitioner of his rights to confront witnesses, to present witnesses in his defense, against self-incrimination, to testify, and to an appeal and the State's burden of proof. When asked whether he waived those rights, the Petitioner said, "Yes." When asked whether he understood that by pleading guilty, the Petitioner stipulated to the State's version of the facts, the record reflects that the Petitioner nodded affirmatively. The Petitioner said that he did not have any questions and that he was satisfied with counsel's representation.

### Post-Conviction Proceedings

At the post-conviction hearing, the Petitioner testified that he and defense counsel, who was deceased at the time of the hearing, did not discuss the charges against the Petitioner before the day of the guilty plea hearing. The Petitioner said that counsel visited him twice in jail to ask how he was, that counsel told the Petitioner his case was "mediocre," and that counsel asked how the Petitioner "obtained a scar on my nose." The Petitioner said that when he asked counsel for the State's discovery material, counsel "didn't have anything to say about it." The Petitioner stated that each conversation lasted between five and ten minutes. The Petitioner said that he often called counsel's office from the jail to request the discovery material. The Petitioner stated that he never spoke to counsel on the telephone. The Petitioner said he asked his mother and others to contact counsel and to obtain the discovery material for the Petitioner.

The Petitioner testified that he asked defense counsel questions about the charges recited during the preliminary hearing in juvenile court, although counsel did not represent him in juvenile court. The Petitioner said that witnesses testified at the preliminary hearing and that no additional hearings were held after his case was transferred to criminal court, although he later said there was one "follow up" appearance in criminal court. The Petitioner stated that his case was set for trial two or three days after the February 18 guilty plea hearing.

-4-

The Petitioner testified that he and defense counsel first discussed the State's plea offer on an occasion before the guilty plea hearing when the Petitioner was in the "bullpen" waiting to appear in court. The Petitioner said that counsel told him the offer was fifteen years at 100% service. The Petitioner stated that he did not know how many offenses to which he was pleading guilty and that counsel did not review the elements of the offenses. The Petitioner said that counsel told him it was in the Petitioner's best interest to plead guilty and that the Petitioner faced a possible sentence of forty to sixty years. The Petitioner stated that in response to the plea offer, he asked counsel for the discovery material and that counsel called him "an arrogant punk."

The Petitioner testified that after he posted bond in January, he called defense counsel and went to counsel's office in an unsuccessful attempt to obtain discovery. He said that he never met with counsel and that his mother and pastor paid an unidentified person to obtain discovery a month after the Petitioner pleaded guilty. The Petitioner remembered reviewing documents explaining the plea agreement and his rights and said he signed the documents outside the courtroom before the guilty plea hearing.

The Petitioner testified that when he went to defense counsel's office, they discussed the upcoming court appearance and the plea offer. The Petitioner said that counsel told him his codefendants would testify against him at a trial but that counsel did not discuss the facts of the case or the "definitions of [the] charges." The Petitioner stated that he knew he was pleading guilty to kidnapping, aggravated robbery, and attempted aggravated robbery. He said that counsel did not provide an explanation for counsel's advising the Petitioner to plead guilty other than a possible forty to sixty year sentence after a trial.

The Petitioner testified later that he was outside the courtroom when defense counsel presented the plea offer to him and that the Petitioner thought the offer "sounded absurd" because the Petitioner did not "have any motion of discovery[.]" The Petitioner said that he never spoke with Mr. Lamb, counsel's investigator, and that the Petitioner did not discuss his case with anyone else in counsel's office.

The Petitioner testified that he agreed to plead guilty because fifteen years was preferable to forty to sixty years, although he did not understand why he faced a forty-year sentence after a trial. He said that he had been diagnosed with schizophrenia, bipolar disorder, anxiety, a social phobia, and post-traumatic stress disorder and that he took medication to control his psychological and emotional disturbances. He stated that on the day of the guilty plea hearing, he had not taken his medication for one or two weeks. He said that his medication stabilized his mood, made him calm, and prevented him from hearing voices. The Petitioner stated that when he did not take his medication, he heard voices and became agitated. He remembered feeling sad and depressed on the day of the guilty plea

hearing because he was going to be away from his family and did not understand his case. He said that as a result, his thoughts were cloudy and his judgment was not "as good as it should have been."

The Petitioner testified that at the guilty plea hearing, he remembered the trial judge asking whether he had taken anything that affected his mental state. The Petitioner stated that he answered no because he was young and did not know that "mental health medication was under the influence of a drug[.]" The Petitioner said that at the time, he did not know how his medication affected him and that in retrospect, his medication and psychological state affected him that day. He stated that he discussed his mental health with defense counsel numerous times. The Petitioner did not remember the judge's advising him of his rights to cross-examine witnesses, to remain silent, to testify, or the State's burden of proof at a trial. The Petitioner remembered saying he was satisfied with counsel and stated that at the time, he thought a fifteen-year sentence was better than forty years. When asked why he did not address his concerns relative to the discovery material when the trial court asked the Petitioner whether he had questions, the Petitioner said that counsel was "standing right next to me, shaking his head" that the Petitioner should not ask questions. The Petitioner stated that had he been thinking clearly and had the opportunity to review his case fully with counsel, he would not have pleaded guilty. The Petitioner said that at the time of the post-conviction hearing he was thinking clearly and understood the consequences of revoking his guilty pleas and going to trial.

On cross-examination, the Petitioner testified that he remembered the juvenile court transfer hearing. He did not remember discussing with his first attorney the case or the State's evidence against him. The Petitioner remembered sitting in the juvenile courtroom and listening to the victim's testimony regarding the robbery. The Petitioner said that the victim identified a codefendant at the hearing as one of the men who entered the victim's apartment but that he did not identify the Petitioner. The Petitioner did not remember the remainder of the victim's testimony. The Petitioner remembered the cab driver testified that two people attempted to rob him and shot at him as he drove away.

The Petitioner testified that after his case was transferred to criminal court and he was released on bond, he was arrested for especially aggravated kidnapping involving his child. He agreed that defense counsel told him about the plea offer before a court appearance in December 2013. The Petitioner stated that after he was released on bond in January 2014, he went to counsel's office two or three times. The Petitioner said that he asked counsel for a mental health evaluation and for the discovery material but that counsel "brushed me off . . . like I wasn't anything."

The Petitioner testified that his mother, pastor, and youth pastor were active participants in his defense and that he knew they met with the prosecutor. The Petitioner stated that he met with defense counsel after the Petitioner's mother met with the prosecutor and that counsel told him the prosecutor would not change the plea offer.

The Petitioner testified that on the day of the guilty plea hearing, the Petitioner, his mother, his brother, his minister, and "my church" spoke to defense counsel and that counsel and the Petitioner read and signed the plea agreement form. The Petitioner acknowledged that at the guilty plea hearing, he denied taking "anything" that affected his mental state. The Petitioner denied saying that the agreement announced by the State was the one to which he agreed. The Petitioner noted that the transcript of the guilty plea hearing was not consistent with his memory of what he said. The Petitioner did not remember nodding affirmatively to indicate he understood the agreement. The Petitioner denied that the trial judge explained his rights. The Petitioner said that when the judge asked whether the Petitioner was entering his guilty pleas voluntarily, the Petitioner said "I am pleading guilty." The Petitioner said that although he denied being forced or coerced to plead guilty, at the time he did not know the definition of coercion. The Petitioner remembered saying yes when asked whether pleading guilty was what he wanted to do.

The Petitioner did not remember saying that he and defense counsel reviewed the guilty plea form. The Petitioner said that he and counsel did not review a waiver of rights form outside the courtroom. The Petitioner stated that the form he saw listed his charges. The Petitioner said that the guilty plea hearing lasted three to five minutes. The Petitioner acknowledged that his signature was on the guilty plea form and that he told the trial judge he was satisfied with counsel's representation and had no questions. Upon examination by the trial court, the Petitioner said that a friend accompanied him to counsel's office.

Gary Lamb testified that in 2014, he shared an office with defense counsel. He said that counsel maintained handwritten records and that counsel generally kept his files at home, although some files were in the office.

Defense counsel's file regarding the Petitioner's case was received as an exhibit. The file contained a copy of the State's response to the motion for discovery, counsel's notes throughout the case, and copies of various motions. Counsel's notes detailed a preliminary hearing and two bond revocation hearings. Relative to the Petitioner's decision to plead guilty, counsel's notes stated, in relevant part, that the Petitioner's family and church members were a "great help" in the Petitioner's decision to plead guilty and that they, not counsel, talked with the Petitioner at length when the Petitioner "got cold feet" about pleading guilty.

Mr. Lamb stated that defense counsel documented his meetings with the Petitioner and that counsel's notes indicated he reviewed the discovery material with the Petitioner on April 14, 2014, although the record reflects that the relevant notes were dated February 14, 2014. Mr. Lamb said that counsel was appointed to the Petitioner's case on July 3, 2013, and that counsel's notes indicated two witnesses testified at the preliminary hearing on July 19. Mr. Lamb stated that generally, a defendant was present for a preliminary hearing. He said that counsel received discovery on January 16, 2014. Mr. Lamb identified a February 14 letter from counsel to the prosecutor containing an acceptance of the plea offer. The letter stated, "I have spent many hours reviewing [the Petitioner's] options and your offer with him. His signature below indicates his commitment to plea[d] to 15 years at a hundred percent this coming Tuesday." The letter was signed by counsel and the Petitioner.

The post-conviction court denied relief. The court discredited the Petitioner's testimony and found that defense counsel's file contained notes regarding the case, the State's discovery response, and meetings with the Petitioner. The court noted, "[m]ost significantly [there] is a letter from [counsel] to the prosecutor accepting the plea-offer[.] The letter states that [counsel] had spent many hours reviewing [the Petitioner's] options. At the bottom, the Petitioner signed off on the letter." The court found that during the guilty plea hearing, counsel acknowledged the State had sufficient proof to convict the Petitioner. The court also found that the trial court asked the Petitioner in different ways if the Petitioner's pleas were voluntary and if the Petitioner understood the agreement and the rights he was waiving by pleading guilty. The post-conviction court found that the Petitioner told the trial court he was not being coerced, wanted to plead guilty, had reviewed the waiver form with counsel, and had signed it. The court found that "[at] no time during the plea hearing did it appear the Petitioner was not coherent or unaware of what he was doing."

Relative to the Petitioner's claim that his guilty pleas were unknowing and involuntary, the post-conviction court concluded that the Petitioner entered knowing and voluntary pleas. The court found that the transcript of the guilty plea hearing reflected the terms of the plea agreement and the factual basis for the charges. The court also found that "[on] more than one occasion, and in more than one format, the [trial court] questioned whether or not the Petitioner understood the plea agreement and voluntarily entered his plea of guilty. Each time, the Petitioner indicated that he understood." Although the post-conviction court noted the Petitioner's youth at the time of the guilty plea hearing, it found that the Petitioner was able to respond intelligently to the trial court, that he had no questions for the trial court, and that he was satisfied by defense counsel's representation. The post-conviction court also found that the Petitioner's mother, brother, and pastor met with counsel and the prosecutor and that "the Petitioner had more input from individuals interested in his well-being than most other defendants." The court determined that the Petitioner entered a

knowing, voluntary, and intelligent guilty plea and that counsel's assertion that the Petitioner would face a greater sentence at a trial was not incorrect or coercive.

Relative to the Petitioner's ineffective assistance of counsel claim, the post-conviction court determined that the Petitioner had "not presented the court with any specific actions or omissions" by defense counsel showing deficient performance. The court found that the Petitioner's testimony and counsel's file reflected the Petitioner met with counsel multiple times. The court also found that counsel's file contained notes about the facts of the case, discovery, and the preliminary hearing, and that it was "incredible to believe [counsel] spent all of this time discussing the plea offer and not the strength of the case against the Petitioner." In addition, the court found that counsel's notes relative to possible defenses and counsel's telling the Petitioner his case was "mediocre" indicated discussion about the strengths and weaknesses of the State's case.

The post-conviction court found that in spite of a "lengthy and detailed recitation of the factual allegations" at the guilty plea hearing, the Petitioner never expressed disagreement or surprise. The court noted the Petitioner's presence at the preliminary hearing during which witnesses testified about the allegations against the Petitioner. The court concluded that the Petitioner had not proven by clear and convincing evidence acts or omissions by defense counsel that fell below an objective standard of reasonableness. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I.      Unknowing and Involuntary Guilty Pleas

The Petitioner contends that his guilty pleas were involuntarily and unknowingly entered. He argues that had counsel adequately explained to him the charges and the evidence in the State's possession, he would not have pleaded guilty. The State responds that

the Petitioner failed to establish that his guilty pleas were unknowing and involuntary. We agree with the State.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record reflects that the Petitioner entered knowing, intelligent, and voluntary guilty pleas. Although the Petitioner testified at the post-conviction hearing that he initially learned of the plea offer on the day he entered his guilty pleas, he later testified that he discussed the plea offer on previous occasions at defense counsel's office. In any event, the post-conviction court discredited the Petitioner's testimony. Counsel's file reflects discussions with the Petitioner about the facts of his case and the plea offer. The Petitioner, by signing counsel's letter to the prosecutor, accepted and agreed with the substance of the letter, indicating that counsel and the Petitioner spent hours reviewing the case and the State's offer and that the Petitioner had decided to accept the offer.

Likewise, the guilty plea hearing transcript reflects that the Petitioner told the trial court that defense counsel explained and reviewed the guilty plea forms with him. The Petitioner told the court that he understood what he was doing by pleading guilty. The Petitioner denied taking anything that might affect his ability to understand the proceedings. The Petitioner said he understood that he was waiving certain rights by pleading guilty, and he did not have questions about his pleas when given the opportunity to ask questions by the trial judge. The Petitioner neither expressed concern about counsel's competence nor informed the court that counsel was forcing him to plead guilty. We conclude that the record does not preponderate against the post-conviction court's findings and that the Petitioner entered knowing, intelligent, and voluntary guilty pleas. He is not entitled to relief on this basis.

## II.    Ineffective Assistance of Counsel

The Petitioner contends that he received the ineffective assistance of counsel. He argues that defense counsel failed to explain adequately the charges and evidence against him. The State responds that counsel's performance was not deficient. We agree with the State.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). One of counsel's duties in preparing for a trial is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In this case, although the Petitioner testified that he and defense counsel never reviewed the charges against him or the discovery materials and that they never spoke of matters other than the plea offer, the post-conviction court discredited the Petitioner's testimony. The Petitioner was present at the preliminary hearing, in which both the victim and the cab driver testified. Counsel's file contained notes about the facts of the case and a copy of the State's discovery material. Counsel's letter to the prosecutor, which the Petitioner signed, stated that counsel had spent hours reviewing the case with the Petitioner. In addition, counsel's notes contained multiple references to obtaining assistance from the Petitioner's family regarding the plea offer, and the Petitioner testified that his family and church members were actively involved in his defense. At the guilty plea hearing, the Petitioner said he heard the State's version of the facts pertinent to each case and understood that by pleading guilty, he was stipulating to those facts. The record does not preponderate against the post-conviction court's determination that the Petitioner did not prove by clear and convincing evidence that counsel failed to explain adequately the Petitioner's charges and the evidence against him. The Petitioner is not entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE